**ADVERSARY PROCEEDING COVER SHEET**        (Court Use Only)

| PLAINTIFFS<br>Central One Federal Credit Union<br>714 Main Street<br>Shrewsbury, Massachusetts 01545 | DEFENDANTS<br>Mark Forge<br>130 Barnard Road<br>Worcester, Massachusetts 01605-1314 |
|---|---|
| ATTORNEY (Firm Name, Address, Tel. No.)<br>John A. Burdick, Jr., Esquire<br>679 Pleasant Street<br>Paxton, MA 01612<br>(508) 752-4633 | ATTORNEY (Firm Name, Address, Tel. No.)<br>Troy Morrison, Esquire<br>255 Park Avenue, Ste. 702<br>Worcester, MA 01609<br>(508) 793-8282 |

Party (check one only)__ 1. U.S. Plaintiff__2. U.S. Defendant   XX 3. U.S. not a Party

CAUSE OF ACTION (Write a Brief Statement of Cause of Action, including all U.S. Statutes Involved)

Complaint to Determine Dischargeability Under Section 523(a)(6)

**NATURE OF SUIT**
(Check the one most appropriate box only)

| | | |
|---|---|---|
| __454. To Recover Money or Property | __455. To revoke an order of confirmation of Chap. 11 or Chap. 13 Plan | __456. To obtain a declaratory judgment relating to any of foregoing causes of action |
| __435. To Determine Validity, Priority or Extent of a Lien or Other Interest in Property | **XX** 426. To determine the dischargeability of a debt 11 U.S.C. §523 | __459. To determine a claim or cause of action removed to a bankruptcy court |
| __458. To obtain approval for the sale of both the interest of the estate and of a co-owner in property | __434. To obtain an injunction or other equitable relief | __498. Other (specify_ |
| __ 424. To object or to revoke a discharge 11 U.S.C. §727 | __457. To subordinate any allowed claim or interest except where such subordination is provided in a plan | |

| ORIGIN OF PROCEEDING | _XX_1. Original Proceed. | __2. Removed Proceed. | __4. Reinstated Or Reopen | __5. Transferred from another Bankruptcy Court |
|---|---|---|---|---|
| DEMAND : | Nearest Thousand<br>$86,241.89 | Other relief sought<br>Equitable Relief | | Jury Demand |

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| Name of Debtor | Bankruptcy Case No. |
|---|---|
| Mark Forge | 10-42082-MSH |

| District | Divisional Office | Name of Judge |
|---|---|---|
| Western | Worcester | Melvin S. Hoffman |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| Plaintiff | Defendant | Adversary Proc. No. |
|---|---|---|

| District | Divisional Office | Name of Judge |
|---|---|---|

**FILING FEE**     __ FEE ATTACHED     __ FEE NOT REQUIRED   XX FEE IS DEFERRED

| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|
| 09/28/10 | John A. Burdick, Jr., Esquire | /s/ John A. Burdick, Jr. |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: )<br>)<br>Mark Forge, )<br>        Debtor )<br>_____ ) | Chapter 7<br>Case No. 10-42082-MSH |
| Central One Federal Credit Union and )<br>Acorn Allocations, LLC, )<br>        Plaintiff )<br>Vs. )<br>)<br>Mark Forge, )<br>        Defendant )<br>_____ ) | Adversary Proceeding No. |

## COMPLAINT OBJECTING TO DISCHARGE
## PURSUANT TO 11 U.S.C. SECTION 523(a)(6)

### GENERAL ALLEGATIONS

Central One Federal Credit Union and Acorn Allocations, LLC, Plaintiffs herein, by John A. Burdick, Jr., their undersigned counsel, for their complaint against Mark Forge (the "Defendant" and/or "Debtor"), alleges as follows:

1.  This is a core proceeding over which this court has jurisdiction under 28 U.S.C. §157(b).

2.  This is an adversary proceeding to determine the dischargeability of a debt.

3.  On April 27, 2010, the Defendant filed for Chapter 7 protection in this Court.

4.  The Plaintiff, Central One Federal Credit Union. ("Central One" and/or "Plaintiff"), is a Credit Union with a usual place of business located at 714 Main Street, Shrewsbury, Massachusetts 01545.

5. The Plaintiff, Acorn Allocations, LLC, ("Acorn" and/or "Plaintiff") is a Limited Liability Company and an affiliate of Central One duly organized in the Commonwealth of Massachusetts with a usual place of business located at 714 Main Street, Shrewsbury, Massachusetts 01545.

6. The Defendant, Mark Forge ("Forge" and/or "Debtor") is an individual residing at 130 Barnard Road, Worcester, Massachusetts.

## COUNT I

7. The Plaintiff realleges and incorporates Paragraphs 1 – 6 into Count I as if set forth in full.

8. On September 27, 2006, the Debtor delivered to Central One a Promissory Note (hereinafter "Note") in the original principal amount of $80,000.00. A true and accurate copy of the Note is attached hereto and incorporated herein by reference as Exhibit "A".

9. The Debtor is in default under the terms of the Note for, *inter alia*, failing to make payments as and when due.

10. On December 17, 2009, among other dates, Central One made demand on the Debtor for all amounts due and owing under the Note. A true and accurate copy of the demand is attached hereto and incorporated by reference as Exhibit "B".

11. As of December 17, 2009, the Forge is indebted to Central One in the principal amount of $79,791.58, interest in the amount of $6,450.31 and interest thereafter accruing, and late fees thereafter accruing, plus all fees, costs and attorneys' fees incurred by Central One enforcing its rights under the Note.

## COUNT II

12. The Plaintiff realleges and incorporates Paragraphs 1 – 11 into Count II as if set forth in full.

13. Mark S. Forge, Trustee of Forge Realty Trust owned the property situated at 92 McGilpin Road, Sturbridge, Massachusetts ("McGilin Road").

14. On July 27, 2009, Forge's interest in McGilpin Road was sold at foreclosure sale by the first mortgage holder.

15. Central One held a second mortgage on McGilpin Road securing the above mentioned obligation.

16. On July 27, 2009, at foreclosure sale, Acorn Allocations, LLC ("Acorn"), an affiliate of Central One, purchased the property at McGilpin Road for $350,000.00 and the delivery of the deed to Acorn occurred on August 26, 2009.

17. Neither Acorn or Central One received any portion of the purchase price paid by Acorn for McGilpin Road.

18. Following the foreclosure sale, and without permission of Acorn, Forge continued to occupy and possess McGilpin Road.

19. Acorn filed a Summary Process action at Worcester Housing Court.

20. Acorn and Forge agreed that an Execution for possession would issue on November 20, 2009.

21. Execution for Possession of McGilpin Road was issued by the Worcester Housing Court, but Forge continued to occupy the premises until December 4, 2009.

22. From August 26, 2009 until December 4, 2009, Forge occupied McGilpin Road as tenant at sufferance.

## COUNT III

23. The Plaintiff realleges and incorporates Paragraphs 1 – 22 into Count II as if set forth in full.

24. During Forge's post-foreclosure occupancy, Forge removed fixtures from the property, without the permission of the owner Acorn, including exterior lighting fixtures, five(5) garage doors, one (1) flagstone walkway, one (1) brick walkway, mature trees and shrubs, a horse coral, a stonewall and appliances. Forge also dug up a sprinkler system.

25. Further, Forge turned up the thermostat to 90 degrees and left the basement windows open in a deliberate attempt to empty the oil tank, and subsequently, freeze the pipes, cause flooding and cause further damage to the premises.

26. Acorn incurred fees to remove Forge, including sheriff fees, attorney's fees and a non-refundable fee to a moving company as required by the sheriff.

27. Forge's actions as set forth above constitute a willful and malicious injury to the property of Acorn Allocations, LLC.

28. The obligation owed by Forge to Central One and Acorn is nondischargable pursuant to 11 U.S.C. Section 523(a)(6).

WHEREFORE, the Plaintiffs request the following relief:

a.  a judgment against Forge in the amount of sum of $86,241.89 plus interest thereafter accruing, and late fees thereafter accruing, plus all fees, costs and attorneys' fees;

b.  a finding that said judgment is nondischargeable pursuant to 11 U.S.C. Section 523(a)(6), and

c.  such other relief as may be just and proper.

> Central One Federal Credit Union
> Acorn Allocations, LLC
> By Their Attorney
>
> */s/John A. Burdick, Jr.*
> John A. Burdick, Jr. (BBO#547650)
> 679 Pleasant Street
> Paxton, Massachusetts 01612
> (508) 752-4633
> jburdicklaw@yahoo.com
> September 13, 2010



P.O. 280
Shrewsbury, MA 01545-0280
508-842-7400  800-527-1017
www.centralfcu.com



**HOME EQUITY SYSTEM**

**Open-End Home Equity Credit Agreement and Truth in Lending Disclosure**

| BORROWER 1 NAME | MARK S FORGE | ACCOUNT NUMBER | 42941-80 |
|---|---|---|---|
| BORROWER 1 ADDRESS | 92 MCGILPIN ROAD STURBRIDGE, MA 01566 | | |
| BORROWER 2 NAME | | ACCOUNT NUMBER | |
| BORROWER 2 ADDRESS | | | |

### CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE

**INTRODUCTION.** This LOANLINER Home Equity Plan Credit Agreement and Truth in Lending Disclosure will be referred to as this "Plan". This Plan consists of this Agreement and the accompanying Addendum which is incorporated into and becomes a part of this Credit Agreement and Truth in Lending Disclosure. The words "you," "your," and "Borrower" mean each person who signs this Plan. The words "we," "us," "our," "Lender," and "credit union" mean the credit union whose name appears above or anyone to whom the credit union transfers its rights under this Plan.

**1. HOW THIS PLAN WORKS.** This Plan establishes a revolving line of credit account ("account"). You and the credit union anticipate that you will obtain a series of advances under this Plan from time to time. The maximum amount you can borrow ("credit limit") is disclosed in the Addendum. It is the amount of credit you may borrow, repay all or a portion and re-borrow subject to the terms of this Plan.

**2. PROMISE TO PAY.** You promise to repay to the credit union, or order, all advances made to you under this Plan, plus finance charges, other applicable charges, and costs of voluntary payment protection for which you are responsible under this Plan. You agree to pay the Minimum Payment on or before the due date.

**3. JOINT ACCOUNTS.** If this is a joint account, each of you must sign this Plan and you will be individually and jointly responsible for the promises you make in this Agreement, including paying all amounts owed. This means that the credit union can require any one of you to repay all advances plus applicable finance charges, other applicable charges, and voluntary payment protection costs. Unless the credit union's written policy requires all of you to sign for an advance, each of you authorizes the other(s) to obtain advances individually and agrees to repay advances made to the other(s). The credit union can release one of you from responsibility under this Plan without releasing the other(s).

**4. SECURITY INTEREST.** This Plan is secured by a mortgage, deed of trust, security deed, or security agreement (the "security instrument") in your dwelling which is described in the Addendum.

**5. PROMISES IN SECURITY INSTRUMENT.** The security instrument you sign the same day you sign this Plan is incorporated by reference into this Plan. You must keep all the promises you made in the security instrument.

**6. APPLICATION OF PAYMENTS.** Payments will be applied in the order the credit union chooses to any finance charges, voluntary payment protection costs, and other applicable charges due before being applied to your unpaid balance.

**7. CREDIT LIMIT.** You promise not to request or obtain an advance that will make your balance exceed your credit limit. Your credit limit will not be increased if you exceed your credit limit. If you exceed your credit limit, you agree to repay the excess immediately.

**8. ACCESS DEVICES.** You can obtain credit advances in any manner authorized by the credit union from time to time. Your application for this account also serves as a request to receive any additional access devices which may be available in the future in connection with this Plan. The terms of this Plan will also apply to any future access devices we issue to you for accessing this Plan.

**9. COST OF CREDIT.** The finance charge is the cost you pay for credit. Unless described otherwise on the Addendum, the finance charge on each new advance begins on the date of the advance and continues until the advance has been paid in full. There is no "free ride period" which would allow you to avoid a finance charge. To compute the finance charge, the unpaid balance for each day since your last payment (or since an advance if you have not yet made

(continued on next page)

### SIGNATURES

By signing below you agree that you have read the LOANLINER Home Equity Plan Credit Agreement and Truth in Lending Disclosure and Addendum and agree to be bound by the terms of the Agreement. You also acknowledge receipt of a copy of this Agreement, and the Home Equity Early Disclosure and handbook entitled "When Your Home is On the Line: What You Should Know About Home Equity Lines of Credit" given to you at the time of application.

*Notice to Vermont Borrowers:* **NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

| X [signature] (SEAL) | X [signature] (SEAL) 9/27/06 |
|---|---|
| BORROWER 1 SIGNATURE               DATE | WITNESS SIGNATURE               DATE |
| X (SEAL) | X (SEAL) |
| BORROWER 2 SIGNATURE               DATE | WITNESS SIGNATURE               DATE |

© CUNA MUTUAL GROUP 1998, 1999, 2000, 01, 02, ALL RIGHTS RESERVED

| Central One Federal Credit Union | MARK S FORGE | Date 10/02/2006 |

**CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE (continued)**

a payment) is multiplied by the applicable periodic rate. The sum of those amounts is the finance charge owed. The periodic rate and corresponding annual percentage rate are disclosed in the Addendum. The balance used to compute the finance charge is the unpaid balance each day after payments and credits to that balance have been subtracted and any new advances have been added.

**10. ANNUAL PERCENTAGE RATE.** The annual percentage rate under this Plan includes only interest and no other costs. The Addendum shows the current interest rate as a periodic rate and a corresponding annual percentage rate. If the interest rate for this Plan is a variable interest rate the Addendum explains how the variable interest rate works. If we forego an annual percentage rate increase, we may return to the full index and margin at a later adjustment subject to any rate limitations.

**11. OTHER CHARGES.** In addition to finance charges, your account is subject to certain other charges as described in this Plan and the Addendum. The credit union can add any of these other charges to your balance or you can pay them in cash.

**12. CHARGES TO YOUR ACCOUNT.** We may charge your account to pay other fees and costs that you are obligated to pay under this Plan or under the security instrument. In addition, we may charge your account for funds required for continuing property insurance coverage or costs to protect or perfect our security interest in your dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your dwelling. If you do not pay your property taxes, we may charge your account and pay the delinquent taxes. Any amount so charged to your account will be a credit advance. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**13. LENDER'S RIGHTS:**

(a) **Termination and Acceleration.** In accordance with applicable law, we can terminate your credit line and require you to pay us the entire outstanding balance in one payment, and charge you certain fees or suspend additional extensions of credit or reduce your credit limit, if any of the following happen:

*For Wisconsin Borrowers Only:*

(1) You fail to make a required payment when due two times within a twelve month period, or

(2) Your failure to observe the terms of this Plan materially impairs the condition, value or protection of, or our rights in, the property securing this Plan.

*For All Other Borrowers:*

(1) You engage in fraud or make a material misrepresentation at any time in connection with this Plan. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition.

(2) You do not meet the repayment terms of this Plan.

(3) Your action or inaction adversely affects the collateral for this Plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the property, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the property, creation of a senior lien on the property without our permission, foreclosure by a prior lienholder, use of the dwelling for prohibited purposes, or taking of the property through eminent domain.

(b) **Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your credit limit during any period in which any of the following are in effect:

(1) The value of the property securing this Plan declines significantly below the property's appraised value for purposes of this Plan. This includes, for example, a decline such that the initial difference between the credit limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under this Plan due to a material change in your financial circumstances.

(3) You are in default of a material obligation of this Plan. We consider all of your obligations to be material. No default will occur until we mail or deliver a notice of default to you.

(4) We are precluded by government action from imposing the annual percentage rate provided for under this Plan.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of the credit limit.

(6) We have been notified by a regulatory authority that continued advances may constitute an unsafe and unsound business practice.

(7) The maximum annual percentage rate under this Plan has been reached.

(8) *For Wisconsin Borrowers Only:* You engage in fraud or material misrepresentation in connection with the Plan.

(c) **Change in Terms.** We may make changes to the terms of this Plan if you agree to the change in writing at that time, if the change will unequivocally

(Continued on next page)

© CUNA MUTUAL GROUP, 1995, 1999, 2000, 01, 03, ALL RIGHTS RESERVED                    FST105 ILASER

| Central One Federal Credit Union | MARK S FORGE | Date 10/02/2006 |
|---|---|---|

## CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE (continued)

benefit you throughout the remainder of this Plan, or if the change is insignificant (such as changes relating to our data processing systems). We may also change the terms of this Plan in accordance with other reasons, if stated on the Addendum. If this Plan follows an index and the index is no longer available, we will choose a new index and margin. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

**14. USE OF ACCOUNT.** You promise to use your account for consumer (personal, family or household) purposes, unless the credit union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**15. MEMBERSHIP IN CREDIT UNION.** You must be a member of the credit union to obtain credit advances.

**16. CONFLICTING INSTRUCTIONS.** You agree not to provide conflicting instructions to us regarding your Plan (such as instructing us not to make credit advances to a joint borrower).

**17. PREPAYMENT.** You may prepay all or part of what you owe at any time without any prepayment penalty.

**18. CANCELLATION BY YOU.** You can cancel your right to future credit advances under this Plan, by notifying us in writing. If this is a joint account and one of you cancels future credit advances under this Plan, the cancellation will apply to both of you, unless the credit union gives written notice to one of you that you may continue to obtain advances. Despite cancellation, your obligations under this Plan will remain in full force and effect until you have paid us all amounts due.

**19. TAX CONSEQUENCES.** You should consult a tax advisor regarding the deductibility of interest and charges under this Plan.

**20. STATEMENT AND NOTICES.** On a regular basis the credit union will send a statement showing all transactions on your account during the period covered by the statement. Statements and notices will be mailed to you at the most recent address you have given the credit union in writing. Notice to any one of you will be notice to all.

**21. TRANSFER OR ASSIGNMENT.** You cannot assign your rights and obligations under this Plan. In spite of any divorce or agreement between joint borrowers, each is responsible for the total amount owed under this Plan. Subject to applicable law, we reserve the right to sell or transfer this Plan to another lender, entity or person, and to assign our rights under the security instrument.

**22. UPDATING INFORMATION.** You promise that you will give us updated financial information and information about matters affecting the title and value of the property securing this Plan. You agree that we may obtain credit reports and appraisals at our option and expense for any reason.

**23. PROPERTY INSURANCE.** You promise to insure the property that secures this Plan, in the amount the credit union requires, against fire and other hazards (including flood insurance if the credit union requires it). You may obtain property insurance from anyone you want that is acceptable to the credit union. We have the right not to accept the insurer for reasonable cause. Subject to applicable law, if you fail to obtain or maintain insurance as required, we may purchase insurance to protect our own interest, add the premium to your balance and/or pursue any other remedies available to us.

**24. VOLUNTARY PAYMENT PROTECTION** -- We may offer Voluntary Payment Protection to you. Voluntary Payment Protection is not necessary to obtain credit. If you purchase Voluntary Payment Protection from us, you authorize us to add the fees or insurance charges monthly to your loan balance and charge you interest on the entire balance. At our option we will change your payment or the period of time necessary to repay the loan balance. The rate used to determine the fees or insurance charges may change in the future. If the rate changes, we will provide any notices required by applicable law.

**25. NO WAIVER.** The credit union can delay enforcing any of its rights under this Plan without losing any of its rights.

**26. CONTINUED EFFECTIVENESS.** If the law makes any term(s) of this Plan unenforceable, the other terms will remain in effect.

**27. DUE ON SALE.** You promise to notify the Credit Union immediately if you enter into an agreement to sell or transfer ownership of all or any part of the property securing this account. If you sell or transfer ownership without first obtaining the written consent of the Credit Union, the Credit Union may exercise its rights described in the Security Instrument, including the right to demand immediate payment in full of all sums secured by the Security Instrument.

**28. THE FOLLOWING NOTICE IS REQUIRED BY CALIFORNIA LAW: TRANSFER OF THE PROPERTY.** Subject to applicable law, Lender shall have the right to accelerate, that is, to demand immediate payment in full of all sums secured by this Mortgage or Deed of Trust, if Borrower, without the written consent of Lender, sells or transfers all or part of the Property or any rights in the Property.

**29. NOTICE TO GEORGIA BORROWERS.** This is an instrument under seal.

**30. NOTICE TO UTAH BORROWERS.** This written agreement is a final expression of the agreement between you and the credit union. This written agreement may not be contradicted by evidence of any oral agreement.

**31. THE FOLLOWING NOTICE IS REQUIRED BY NEW YORK LAW:** Default in the payment of this loan agreement may result in the loss of the property securing the loan. Under federal law, you may have the right to cancel this agreement. If you have this right, the creditor is required to provide you with a separate written note specifying the circumstances and times under which you can exercise this right.

© CUNA MUTUAL GROUP, 1998, 1999, 2000, 01, 03, ALL RIGHTS RESERVED  EST105 (LASER)

## BILLING RIGHTS — KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT.** If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay a credit card account automatically from your share account or share draft account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the statement was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to send statements to you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your statement was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© CUNA MUTUAL GROUP, 1998, 1999, 2000, 01, 03. ALL RIGHTS RESERVED                    ES1105 (LASER)

**CENTRAL ONE FEDERAL CREDIT UNION**
P.O. Box 2
Shrewsbury, MA 01545-0280
508-842-7400  800-527-1017
www.centralfcu.com


**LOANLINER**
HOME EQUITY SYSTEM

## HOME EQUITY ADDENDUM

This Addendum is incorporated into and becomes a part of your LOANLINER® Credit Agreement and Truth in Lending Disclosure.

| OPENING DATE | MATURITY DATE | CREDIT LIMIT | ACCOUNT NUMBER | Payment OPTION 1 |
|---|---|---|---|---|
| 09/27/2006 | 11/01/2046 | $80,000.00 | 42941-00 | X  Payment OPTION 2 |

**BORROWER NAME AND ADDRESS**
MARK S FORGE, TRUSTEE OF THE FORGE REALTY TRUST

92 MCGILPIN ROAD
STURBRIDGE MA 01566

**ADDRESS OF PROPERTY SECURING ACCOUNT**
92 MCGILPIN ROAD A/K/A 104 MCGILPIN
STURBRIDGE, MA 01566

| INDEX RATE | MARGIN ADDED TO INDEX | ANNUAL PERCENTAGE RATE | DAILY PERIODIC RATE |
|---|---|---|---|
| 8.25 % | .00 % | 8.25 % | 0.0226 % |

### SCHEDULE OF CLOSING COSTS:

| Description | Amount | Description | Amount |
|---|---|---|---|
| AVM FEE | $ 25.00 | DOC FEE | $ 200.00 |
| 42941 L2 | $ 17186.30 | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |

**PAYMENT INFORMATION:** You may choose from the following payment options. Please indicate your choice above.

**OPTION 1:** You can obtain credit advances for 10 years. This period is called the "draw period." At our option, we may renew or extend the draw period. After the draw period ends the repayment period will begin. The length of the repayment period will depend on the balance at the time of the last advance you obtain before the draw period ends. You will be required to make monthly payments during both the draw and repayment periods. At the time of the credit advance a payoff period of 240 monthly payments will be used to calculate your payment.

The payoff period will always be the shorter of the payoff period for your outstanding balance or the time remaining to the maturity date. Your payment will be set to repay the balance after the advance, at the current annual percentage rate, within the payoff period. Your payment will remain the same unless you obtain another credit advance. Your payment may also change if the annual percentage rate increases or decreases. Each time the annual percentage rate changes, we will adjust your payment to repay the balance within the original payoff period. Your payment will include any amounts past due and any amount by which you have exceeded your credit limit, and all other charges. Your payment will never be less than the smaller of $50.00, or the full amount you owe.

**OPTION 2:** You can obtain credit advances for 20 years. This period is called the "draw period." At our option, we may renew or extend the draw period. After the draw period ends the repayment period will begin. The length of the repayment period will be 20 years. During the draw period your monthly payment will equal the finance charges (interest) that accrued on the outstanding balance during the preceding month. Your payment will include any amounts past due and any amount by which you have exceeded your credit limit and all other charges.

At the beginning of the repayment period we will recalculate your payment. Your payment will be set to repay the balance at the current annual percentage rate over 20 years. Each time the annual percentage rate changes we will adjust your payment to repay the balance within the original 20 years. Your payment will include any amount past due and all other charges. Your payment will never be less than the smaller of $50.00 or the full amount that you owe.

**TRANSACTION REQUIREMENTS:** The minimum credit advance that you can receive is $250.00 for the first advance and $250.00 for each subsequent advance.

**PERIODIC RATE AND CORRESPONDING ANNUAL PERCENTAGE RATE:** We will determine the periodic rate and the corresponding annual percentage rate as follows. We start with an independent index, (the "Index"), which is the Wall Street Journal Prime Rate. When a range of rates has been published, the highest rate will be used. We will use the most recent index value available to us as of 10 days before the date of any annual percentage rate adjustment. To determine the periodic rate that will apply to your account, we add a margin, as disclosed above, to the value of the Index. If the rate is not already rounded we then round up to the next .125%. Then we divide this sum by the number of days in a year (365). To obtain the annual percentage rate we will multiply the periodic rate by the number of days in a year (365). This result is the annual percentage rate.

The annual percentage rate can change on the fifteenth of July if you choose payment OPTION 1. The annual percentage rate can change annually on the 15th of the month in which you opened your plan if you choose payment OPTION 2. . There is no limit on the amount by which the annual percentage rate can change during any one year period. The maximum **ANNUAL PERCENTAGE RATE** that can apply is 17.5% or the maximum permitted by law, whichever is less.

CUNA MUTUAL INSURANCE SOCIETY 1992 1993 ALL RIGHTS RESERVED           EA0002 300643 (CMARK2) 03/09/2006

OTHER CHARGES:

Non-Sufficient Funds Charge: We will charge you a fee of $10.00 if you pay your account with an insufficient funds check.

Over the Credit Limit Fee: We will charge your account $10.00 if you request an advance that would exceed your credit limit.

Check Printing Fee: We will charge you $10.00 per order for printing checks or sharedrafts to be used to obtain advances under this plan.

FEE REIMBURSEMENT: The credit union may pay your closing costs. However, if you close this plan within 36 months of the opening date you will have to reimburse the credit union for all fees paid on your behalf.

COLLECTION COSTS:
For Borrowers in NH: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorneys fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings. If, by applicable law, we are permitted to collect attorneys fees from you as part of our costs of collecting under this agreement, then you, to the extent required by New Hampshire Revised Statutes Annotated Chapter 361-C as amended, shall be entitled to reasonable attorneys fees if you prevail in (a) any action, suit or proceeding brought by us, or (b) any action brought by you. If you successfully assert a partial defense or setoff, recoupment or counterclaim to any action brought by us, the court may withhold from us the entire amount or such portion of the attorneys fees as the court considers equitable.

For Borrowers in CT, MA, ME, RI, VT: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorneys fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings.

SHAREDRAFT ACCOUNTS: We may authorize you to obtain credit advances by writing sharedrafts on your home equity account. We reserve the right not to honor a sharedraft in the following circumstances:

(a) Your Credit Limit has been or would be exceeded by paying the sharedraft.

(b) Your sharedraft is post-dated. If a post-dated sharedraft is paid and as a result any other check is returned or not paid, we are not responsible.

(c) Your sharedrafts have been reported lost or stolen. You should notify us at once if your sharedrafts are lost or stolen.

(d) Your sharedraft is not signed by an "Authorized Signer", which means a person who signed this Agreement, or has signed a separate signature card for the account.

(e) Your account has been terminated or suspended as provided in this Agreement.

(f) The amount of your sharedraft is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement.

If we pay any sharedraft under these conditions, you must repay us for the amount of the sharedraft and any charges permitted by law. The sharedraft itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a sharedraft is limited to your actual damages. Dishonor for any reason as provided in the Agreement is not wrongful dishonor. We may not return the sharedrafts along with your periodic statements; however, your use of a sharedraft will be reflected on your periodic statement as a credit advance. We do not "certify" sharedrafts drawn on your account.

UPDATING INFORMATION. You promise that you will give us updated financial information and information about matters affecting the title and value of the property securing this Plan. You agree that we may obtain credit reports and appraisals at our option and expense for any reason.

_____

MARK S. FORGE, TRUSTEE OF FORCE REALTY TRUST

_____

MARK S. FORGE, INDIVIDUALLY

EXHIBIT B

# Law Offices of Joseph R. Jenkins

Attorneys at Law

116 Flanders Road, Suite 1100
Westborough, MA 01581

Joseph R. Jenkins
jjenkins@jrjlawoffice.com

Phone (508) 366-1002
Facsimile (508) 898-9777

Maura Ford Maloney
mford@jrjlawoffice.com

SENT CERTIFIED & FIRST CLASS MAIL   & Fax 508.765.9968

December 17, 2009

Mark S. Forge
C/O Michael Colognesi, Esquire
39 Elm Street
Southbridge, MA 01550

RE:   Delinquent Home Equity Line of Credit Agreement with Central One Federal Credit Union – Account # 42941-80

Dear Mr. Forge:

The records of the undersigned indicate that you are in default under the terms of the above-referenced Home Equity Line of Credit Agreement and encumbering real property located at the property address noted above. Under the terms of the Open-End Home Equity Credit Agreement and Truth in Lending Disclosure, you are hereby notified of the following:

1. You are in default because you failed to pay the required monthly installments for your Home Equity Line of Credit Agreement and as of this date, December 17, 2009, you are due and owing the amount of $86,241.89 for the Principal, Interest, Escrow and late charges and fees for the above captioned account. This amount will continue to increase hereafter.
2. If there is reason to dispute the debt, or any portion thereof, you must notify us in writing immediately.
3. This total amount is due upon receipt.
4. The name of the mortgage loan originator for your Home Equity Line of Credit Agreement is the Central One Federal Credit Union.
5. Please remit payment to:
   Central One Federal Credit Union c/o Joseph R. Jenkins, Esquire
   116 Flanders Road, Suite 1100
   Westborough, MA 01581

THE UNDERSIGNED IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

Very truly yours,

Joseph R. Jenkins
Cc: client

SHREWSBURY OFFICE: 512 West Main Street, Shrewsbury, MA 01545 ♦ Telephone (508) 842-1002 ♦ Facsimile (508) 842-2854